IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MADELINE THOMAS,                     :
                                     :
        Plaintiff,                   :
                                     :
   v.                                : Civil Action No. 05-226-JJF
                                     :
JO ANNE B. BARNHART,                 :
Commissioner of Social               :
Security,                            :
                                     :
        Defendant.                   :
                                     :
                                     :

_____

Anthony R. Mignini, Esquire of MIGNINI & RAAB, LLP, Bel Air,
Maryland.
John S. Grady, Esquire of GRADY & HAMPTON, Dover, Delaware.

Attorney for Plaintiff.

Colm F. Connolly, Esquire, United States Attorney, of the OFFICE
OF THE UNITED STATES ATTORNEY, Wilmington, Delaware.
Donna L. Calvert, Esquire, Regional Chief Counsel of the SOCIAL
SECURITY ADMINISTRATION, Philadelphia, Pennsylvania.
David F. Chermol, Esquire, Special Assistant United States
Attorney of the OFFICE OF THE UNITED STATES ATTORNEY,
Philadelphia, Pennsylvania.

Attorneys for Defendant.

_____

**MEMORANDUM OPINION**

January 10, 2007

Wilmington, Delaware

Farnan, District Judge.

Presently before the Court is an appeal pursuant to 42 U.S.C. §§ 405(g) and 1381 filed by Plaintiff, Madeline Thomas, seeking review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433, 1381-1383f.  Plaintiff has filed a Motion For Summary Judgment (D.I. 22) requesting the Court to enter judgment in her favor.  In response to Plaintiff's Motion, Defendant has filed a Cross-Motion For Summary Judgment (D.I. 26) requesting the Court to affirm the Commissioner's decision.  For the reasons set forth below, Defendant's Motion For Summary Judgment will be granted, and Plaintiff's Motion For Summary Judgment will be denied.  The decision of the Commissioner dated December 29, 2004, will be affirmed.

**BACKGROUND**

**I.   Procedural Background**

Plaintiff protectively filed an application for DIB and SSI on April 16, 2003, alleging disability as of December 1, 2001, due to fibromyalgia and lower back pain.  (Tr. 76-78, 120-126).  Plaintiff's application was denied initially.  (Tr. 27-30).  On reconsideration, Plaintiff added additional medical conditions,

1

including depression and "possible severe arthritis." (Tr. 127).
However, Plaintiff's claim was still denied.

Plaintiff filed a timely request for an administrative
hearing, and the A.L.J. held a hearing on December 3, 2004. (Tr.
358-375). Plaintiff voluntarily waiver her right to
representation at the hearing, but testified along with a
vocational expert. (Tr. 390-410).

Following the hearing, the A.L.J. issued a decision dated
December 29, 2004, denying Plaintiff's claim. (Tr. 14-22).
Thereafter, Plaintiff retained counsel and filed an appeal. (Tr.
9). After considering additional submissions from Plaintiff's
counsel, the Appeal's Council denied review. (Tr. 5-8, 386-389).
Accordingly, the A.L.J.'s decision became the final decision of
the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000).

After completing the process of administrative review,
Plaintiff filed the instant civil action pursuant to 42 U.S.C. §
405(g), seeking review of the A.L.J.'s decision denying her claim
for DIB. In response to the Complaint, Defendant filed an Answer
(D.I. 14) and the Transcript (D.I. 16) of the proceedings at the
administrative level.

Thereafter, Plaintiff filed a Motion For Summary Judgment
and Opening Brief (D.I. 22, 23) in support of the Motion. In
response, Defendant filed a Cross-Motion For Summary Judgment and
a combined Opening and Answering Brief (D.I. 26, 27) requesting

2

the Court to affirm the A.L.J.'s decision.  Plaintiff filed a
Reply Brief (D.I. 28), and therefore, this matter is fully
briefed and ripe for the Court's review.

## II.  Factual Background

### A.  <u>Plaintiff's Medical History, Condition and Treatment</u>

At the time the A.L.J. issued his decision, Plaintiff was
twenty-four years old.  (Tr. 124).  Plaintiff earned a high
school equivalency diploma in 2002 (Tr. 395), and worked for CVS
Pharmacy for three years from 1996 to 1999.  Plaintiff's job
duties at CVS included working at the cash register, restocking
shelves, and training and supervising employees.  From 1999 until
May 2000, Plaintiff worked as Assistant Payroll Manager for
Choice Tobacco Shop.  From September 2001 until January 2002,
Plaintiff worked as a medical assistant for a chiropractor.  (Tr.
397).  According to Plaintiff, the chiropractor "messed up" her
back, and she has been unable to work ever since.  (Tr. 397).

#### 1.  Physical Condition

With respect to Plaintiff's physical complaints, Plaintiff
treated with her family physician initially, who then referred
her to various specialists for other conditions.  In January
2002, Plaintiff saw Dr. Eric Tamesis, a rheumatologist for
complaints of multiple joint pain.  (Tr. 189).  Neurological
examinations performed on Plaintiff at that time revealed no
focal weaknesses or deficits.  Plaintiff's musculoskeletal

3

examination revealed no significant limitations or pain on the range of motion of her cervical spine and her shoulders. Her grip strength was maintained bilaterally and her straight-leg raising test was negative. Plaintiff had tenderness on palpation of both supraspinatus and trapezius muscles and some mild tenderness on palpation of her gluteus maximum and trochanteric areas. Dr. Tamesis remarked that Plaintiff had no definite evidence of limitation of joint motion and no evidence of any acute inflammation. However, Dr. Tamesis indicated that Plaintiff's symptoms were suggestive of fibromyalgia syndrome and he recommended further laboratory testing. (Tr. 190).

As noted by Dr. Ramesh Vemulapalli, an infectious disease doctor, Plaintiff's rheumatoid factor and ANA were negative. However, her sedimentation rate and C Reactive protein were elevated and her ASO titer was increased. Dr. Vemulapalli noted that Plaintiff had tender spots on palpation over the insertion of extensor tendons of the neck and shoulders and tenderness over the medial aspect of both elbows, the lower lumbar spine, the sacroiliac joints and the medial aspect of her knees. Dr. Vemulapalli noted no evidence of inflammation or joint welling and no active restriction of range of motion at the joints. (Tr. 187). Dr. Vemulapalli ruled out rheumatic arthritis and indicated that Plaintiff "more likely has some component of fibromyalgia associated with arthritis symptoms." (Tr. 188).

4

Plaintiff then treated with Dr. Maged Hosny, a rheumatologist, for complaints of neck and back pain.  At treatment visits from April 23, 2002 through September 27, 2002, Dr. Hosny noted multiple tender points consistent with active fibromyalgia.  Dr. Hosny also noted that Plaintiff's pain was under control with Oxycontin and Zanaflex, and he regularly refilled these prescription.  However, at a visit in June 2002, Dr. Hosny wrote that he could not refill her prescription for Oxycontin because she used extra pills.  Instead, Dr. Hosny prescribed Vicodin and Percocet.  (Tr. 138).

In July 2002, Dr. Hosny sent Plaintiff for several tests, including an MRI of the right knee and x-rays of the lumbar spine, pelvis and knees.  Plaintiff's MRI was normal without evidence of inflammatory arthropathy.  Plaintiff's spinal x-rays were negative for degenerative disc disease and her knee and pelvis x-rays were also negative.  (Tr. 145-148).

In September 2002, Plaintiff was evaluated by Dr. Glen Rowe for complaints of right knee discomfort.  Dr. Rowe noted that Plaintiff's MRI of the right knee was normal.  He diagnosed chondromalacia and synovitis and prescribed Naprosyn and Darvocet.  Plaintiff also called Dr. Rowe's office and asked him to prescribe Vicodin, but Dr. Rowe declined.  (Tr. 156).

Dr. Rowe referred Plaintiff to Dr. Ganesh Balu, a specialist in pain management and rehabilitation.  Dr. Balu ordered an MRI

of Plaintiff's lumbar spine in March 2003.  The MRI showed facet arthropathy and mild to moderate degenerative disc disease in the lower lumbar spine, greatest at L5-S1, where there is moderate to severe left L5 radiculopathy.  (Tr. 261).  Dr. Balu treated Plaintiff's condition with acupuncture, a TENS unit, massage therapy and medication.  (Tr. 277-287).

Plaintiff returned to Dr. Rowe on June 23, 2003, more than a year after her last appointment.  Dr. Rowe felt that "[s]he was lost to follow up as there were some features of drug seeking behavior."  (Tr. 305).  Dr. Rowe noted "[m]ultiple tender points in classical pattern in exaggerated manner."  (Id.)  He informed Plaintiff that he would "look into treating the possible arthritis but as there was the previous attempt to obtain multiple prescriptions of Percocet in 4/02, I told her she will have to obtain all her pain medications from one physician as I can no longer prescribe her any of these."  (Id.)

In October 2003, Plaintiff sought treatment from Dr. K. Alvin Lloyd, a neurologist for complaints of headaches.  Dr. Lloyd's impression what that Plaintiff suffered from "[c]hronic daily headache, possible representing analgesic rebound headache."  (Tr. 363).  At subsequent visits in February 2004, Dr. Lloyd noted that Plaintiff showed some improvement with Neurontin.  (Tr. 358-359).

In March 2004, Plaintiff's family doctor, Dr. Willet,

6

completed a medical source statement of ability to do work-
related activities.  Dr. Willet indicated that Plaintiff had the
residual functional capacity ("RFC") for less than sedentary work
due to arthritis and/or fibromyalgia. (Tr. 350).  Dr. Willet
indicated that Plaintiff could lift less than ten pounds, stand
and/or walk less than two hours in an eight hour work day, could
perform no postural activities like climbing, kneeling, crouching
or stooping, and must periodically alternate positions to relieve
pain.  (Tr. 350-351).

     At the request of Disability Determination Service,
Plaintiff underwent an examination by Dr. Lifrak.  Plaintiff
arrived at the examination using two crutches for the pain she
reported in her right knee.  (Tr. 215).  During this examination,
Plaintiff reported that with the use of crutches, she was able to
climb stairs, sit for a total of four hours and stand for a total
of up to one hour.  Plaintiff estimated that she could lift 15
pounds with each hand.  Dr. Lifrak observed that Plaintiff
exhibited a moderate limp favoring the right lower extremity.
She was able to get on and off the examining table without
assistance, but could not walk on her heels or toes.  Dr. Lifrak
noted that the range of motion of Plaintiff's spine was reduced
in the area of the lumbosacral spine and cervical spine, with a
mild degree of paravertebral muscle spasm present in the
lumbosacral spine.  Dr. Lifrak's diagnostic impression was that

Plaintiff suffered from degenerative joint disease and possible fibromyalgia rheumatica.  Dr. Lifrak went on to opine that Plaintiff could walk and climb stairs with the use of her crutches, sit for a total period of 5-6 hours in an 8 hour day, stand for up to one hour in an eight hour day and lift up to ten pounds with either hand on a regular basis.  (Tr. 215-218).

Two state agency physicians also reviewed Plaintiff's physical condition.  The first reviewing physician's assessments were similar to those of Dr. Lifrak.  Specifically, he opined that Plaintiff could stand at least 2 hours in an 8 hour work day and could sit about 6 hours in an 8 hour work day.  He also opined that she could only occasionally perform postural limitations like climbing, kneeling, crouching or stooping.

The second state agency physicians opined that Plaintiff could sit and stand 6 hours in an 8 hour work day.  He also opined that Plaintiff could only occasionally climb, but could frequently perform the other postural limitations.  He concluded that Plaintiff retained the RFC for light work.

2.   Plaintiff's mental condition

Plaintiff was evaluated by Dr. David Nixon in May 2002, when she was twenty-one years old.  Dr. Nixon noted that Plaintiff had received counseling at the age of seventeen for a period of two years in connection with alleged abuse by her step father. Plaintiff told Dr. Nixon that she met the father of her child at

8

age 18 and that her relationship with him was abusive and caused her anxiety.  Plaintiff told Dr. Nixon that she was seeking a protective order from her ex-boyfriend.  Plaintiff indicated that she was using Xanax and Paxil.  (Tr. 152).

Dr. Nixon diagnosed Plaintiff with depressive disorder and ruled out post traumatic stress disorder.  Dr. Nixon assessed Plaintiff was a Global Assessment of Function ("GAF") score of 50.

At a June 2002 visit with Dr. Nixon, Plaintiff reported that she had obtained the protective order from her ex-boyfriend and felt relieved.  A month later, Plaintiff reported that she had a new boyfriend and was living with him.  Plaintiff told Dr. Nixon, "I don't need therapy right now."  Plaintiff returned to Dr. Nixon in August 2002 and requested more Xanax.  Plaintiff then failed to show for two scheduled appointments.  (Tr. 149).

In November 2002, Azucena Ausejo, M.D., performed a psychiatric evaluation of Plaintiff at the request of DDS.  Dr. Ausejo noted that Plaintiff did not express any psychotic symptoms, but that she displayed a moderate level of anxiety. Plaintiff told Dr. Ausejo that she no longer drives and that her mother would be picking her up after the interview.  Dr. Ausejo watched Plaintiff go to her car after the interview, and noted that she "readily got rid of her crutches, walked very briskly towards the driver's seat and drove off, she was driving the

car." (Tr. 204). Dr. Ausejo also noted that in spite of her complaints of pain and being unable to walk without crutches, Plaintiff did not exhibit any uncomfortableness during the whole interview, except when she stood up and stretched stating that her back hurt. Dr. Ausejo diagnosed Plaintiff with dysthymic disorder and borderline personality disorder. He assessed her GAF score as 65, which reflects some mild symptoms. (Tr. 205).

Dr. Ausejo also completed a supplemental questionnaire regarding her residual functional capacity. Dr. Ausejo found that Plaintiff had no limitation on her ability to relate to other people, comprehend and follow instructions, perform work where contact with others will be minimal, and perform simple, repetitive tasks. Dr. Ausejo found that Plaintiff had mild restrictions in her ability to perform work requiring frequent contact with others and to perform complex, varied tasks. Dr. Ausejo also determined that Plaintiff had a moderate degree of restriction of daily activities and a moderate degree of constriction of interests. (Tr. 206-207).

B.   The A.L.J.'s Decision

On December, 3, 2004, the A.L.J. conducted a hearing on Plaintiff's application for benefits. At the hearing, Plaintiff waived her right to counsel. Plaintiff testified that she drives when needed, but doesn't like to drive and cannot drive long distances. Plaintiff testified that she is in excruciating pain

10

and is unable to work.  She told the A.L.J. that she moved back in with her mom so that she could help her take care of her son. She testified that she has pain all the time in her lower back and neck.  With regard to her knee, Plaintiff testified that she had it scoped and that it was better now, but that she'd have to go back every seven years for this procedure.  Plaintiff testified that she had constant headaches with migraines four or five times a month that make her experience nausea and vomiting. Plaintiff testified that she takes numerous medications and would have difficulty taking a gallon of milk out of the refrigerator, walking the Dover Mall, sitting for more than fifteen minutes without changing positions, laying down for long periods of time or standing.  Plaintiff also testified that she has to change positions more frequently than every ten minutes.  As far as her daily activities, Plaintiff testified that she only does very light cooking and her son helps her do the laundry.  Plaintiff testified that she can't grocery shop by herself and that her boyfriend helps her with her personal care like shaving her legs. Plaintiff testified that she sleeps a lot during the day, does word puzzles, and sees her aunt and grandmother on a regular basis.  Plaintiff testified that she used to go out to dinner with her boyfriend, but she hasn't had the time or the money. Plaintiff's boyfriend also testified as to her condition.

In addition to the testimony of Plaintiff and her boyfriend, the A.L.J. heard testimony from the vocational expert. The A.L.J. described Plaintiff's past relevant work as semi-skilled and light. The A.L.J. asked the vocational expert to assume a hypothetical individual with the vocational profile of Plaintiff who was capable of working at the sedentary exertional level with a sit/stand option and who could only do postural movements occasionally. The A.L.J. also posited that the individual would need to avoid damp and cold conditions and would be limited to simple, routine work. In response to the A.L.J.'s hypothetical question, the vocational expert identified the following jobs (1) unskilled cashier for which there are approximately 1,000 positions in Delaware and 590,000 positions in the national economy; (2) inspection work for which there are 100 positions in Delaware and 39,000 positions in the national economy; and (3) information clerk for which there are 150 positions in Delaware and 54,000 positions in the national economy. The A.L.J. then asked the vocational expert to add to the limitations an individual whose pain and medication would adversely affect her concentration, persistence and pace in excess of 50 percent of the work day. The vocational expert testified that there would be no jobs available for such a hypothetical individual.

In his decision dated December 29, 2004, the A.L.J. found that Plaintiff suffered from lumbar disc disease and dysthymia

which are "severe" impairment, but impairments that did not meet
or equal one of the listed impairments in 20 C.F.R. pt. 404,
subpt. P. app. 1 (2003).  (Tr. 21).  The A.L.J. further found
that Plaintiff was not fully credible and that she retained the
residual functional capacity to perform "sedentary simple,
routine level work with sit/stand option, with occassional
postural limitations and subject to avoidance of damp and cold
conditions."  (Tr. 22).  As a result, the A.L.J. found that
plaintiff could perform a significant range of sedentary work,
but not the full range.  Using Medical Vocational Rule 201.28 as
a framework for decision making, the A.L.J. concluded that
Plaintiff could perform a significant number of jobs in the
national economy, and therefore, she was not disabled within the
meaning of the Act.

## STANDARD OF REVIEW

Findings of fact made by the Commissioner of Social Security
are conclusive, if they are supported by substantial evidence.
Accordingly, judicial review of the Commissioner's decision is
limited to determining whether "substantial evidence" supports
the decision.  Monsour Medical Ctr. v. Heckler, 806 F.2d 1185,
1190 (3d Cir. 1986).  In making this determination, a reviewing
court may not undertake a de novo review of the Commissioner's
decision and may not re-weigh the evidence of record.  Id.  In
other words, even if the reviewing court would have decided the

13

case differently, the Commissioner's decision must be affirmed if it is supported by substantial evidence.  Id. at 1190-91.

The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence.  As the United States Supreme Court has noted substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Pierce v. Underwood, 487 U.S. 552, 555 (1988).

With regard to the Supreme Court's definition of "substantial evidence," the Court of Appeals for the Third Circuit has further instructed that "[a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores or fails to resolve a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion."  Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).  Thus, the substantial evidence standard embraces a qualitative review of the evidence, and not merely a quantitative approach.  Id.; Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

14

DISCUSSION

I.   Evaluation Of Disability Claims

   I.   Evaluation Of Disability Claims

   Within the meaning of social security law, a "disability" is
defined as the inability to do any substantial gainful activity
by reason of any medically determinable physical or mental
impairment, which can be expected to result in death, or which
has lasted or can be expected to last, for a continuous period of
not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A),
1382(c)(a)(3).  To be found disabled, an individual must have a
"severe impairment" which precludes the individual from
performing previous work or any other "substantial gainful
activity which exists in the national economy."  20 C.F.R. §§
404.1505, 416.905.  In order to qualify for disability insurance
benefits, the claimant must establish that he or she was disabled
prior to the date he or she was last insured.  20 C.F.R. §
404.131, Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990).  The
claimant bears the initial burden of proving disability.  20
C.F.R. §§ 404.1512(a), 416.912(a); Podeworthy v. Harris, 745 F.2d
210, 217 (3d Cir. 1984).

   In determining whether a person is disabled, the Regulations
require the A.L.J. to perform a sequential five-step analysis.
20 C.F.R. §§ 404.1520, 416.920.  In step one, the A.L.J. must
determine whether the claimant is currently engaged in

15

substantial gainful activity.  In step two, the A.L.J. must

determine whether the claimant is suffering from a severe

impairment.  If the claimant fails to show that his or her

impairment is severe, he or she is ineligible for benefits.

Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

    If the claimant's impairment is severe, the A.L.J. proceeds

to step three.  In step three, the A.L.J. must compare the

medical evidence of the claimant's impairment with a list of

impairments presumed severe enough to preclude any substantial

gainful work.  Id. at 428.  If the claimant's impairment meets or

equals a listed impairment, the claimant is considered disabled.

If the claimant's impairment does not meet or equal a listed

impairment, the A.L.J.'s analysis proceeds to steps four and

five.  Id.

    In step four, the A.L.J. is required to consider whether the

claimant retains the residual functional capacity to perform his

or her past relevant work.  Id.  The claimant bears the burden of

establishing that he or she cannot return to his or her past

relevant work.  Id.

    In step five, the A.L.J. must consider whether the claimant

is capable of performing any other available work in the national

economy.  At this stage the burden of production shifts to the

Commissioner, who must show that the claimant is capable of

performing other work if the claimant's disability claim is to be

denied.  Id.  Specifically, the A.L.J. must find that there are
other jobs existing in significant numbers in the national
economy, which the claimant can perform consistent with the
claimant's medical impairments, age, education, past work
experience and residual functional capacity.  Id.  In making this
determination, the A.L.J. must analyze the cumulative effect of
all of the claimant's impairments.  At this step, the A.L.J.
often seeks the assistance of a vocational expert.  Id. at 428.

## II.  Whether The A.L.J.'s Decision Is Supported By Substantial Evidence

By her Motion, Plaintiff contends that the A.L.J.'s decision
is not supported by substantial evidence.  Specifically,
Plaintiff contends that the A.L.J. erred in (1) failing to find
that Plaintiff's fibromyalgia was not a severe impairment, (2)
failing to properly evaluate Plaintiff's pain and credibility,
and (3) failing to give proper weight to the opinion of
Plaintiff's treating physician.

### A.  Whether The A.L.J. Erred In Failing To Consider Plaintiff's Fibromyalgia As A Severe Impairment

Plaintiff contends that the A.L.J. erred in failing to find
that Plaintiff's fibromyalgia was not a severe impairment.
Plaintiff contends that the medical evidence supports a diagnosis
of fibromyalgia, as well as chronic fatigue syndrome.  Plaintiff
also contends, in the context of this argument, that the A.L.J.
erred in concluding that Plaintiff's headaches were controlled by

17

medication.

With respect to Plaintiff's complaints of headache, the A.L.J. found that her symptoms improved with medication and that her neurological exams and statements to physicians showed no functional limitations associated with migraines like blurred vision, nausea or other problems. Reviewing the evidence in the record, the Court concludes that the A.L.J.'s findings are supported by substantial evidence. According to her medical records, Plaintiff's neurological examinations revealed no focal weaknesses or deficits. (Tr. 190). Plaintiff treated with Dr. Lloyd specifically for her headaches, and although her early treatment records suggest little help from her medications, by February 2, 2004, Dr. Lloyd expressly noted that Plaintiff's headaches improved, at least somewhat, with Neurontin.

As for the A.L.J.'s decision that Plaintiff's fibromyalgia was not severe, the Court concludes that the A.L.J.'s conclusion does not amount to reversible error. The step-two inquiry is a de minimus screening device used to dispose of groundless claims. Newell v. Commissioner of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). If the evidence presented by the plaintiff demonstrates more than a "slight abnormality," the step-two requirement of severity is satisfied and the sequential evaluation should continue. Id. In this case, the A.L.J. did not find that Plaintiff's fibromyalgia was a severe impairment; however, the

18

A.L.J. did not deny benefits at this stage of the evaluation and continued on to step five considering other impairments whose affects on Plaintiff were essentially the same as those that would have been found if the A.L.J. had found that Plaintiff's fibromyalgia was severe.  Specifically, the A.L.J. found that Plaintiff suffered from lumbar disc disease which was a severe impairment that affected her ability to walk for prolonged periods of time, stand, and lift more than ten pounds.  In light of these findings, the A.L.J. limited Plaintiff's lifting, provided for a sit/stand option and excluded Plaintiff from settings which were damp and/or cold.  These limitations are consistent with the limitations identified in the record as being associated with Plaintiff's fibromyalgia.  Thus, while the record may have supported a finding of severe fibromyalgia, such a finding would not have changed the A.L.J.'s analysis. Accordingly, the Court cannot conclude that the A.L.J.'s decision regarding Plaintiff's fibromyalgia requires reversal.

With respect to Plaintiff's contention that the A.L.J. should also have determined that her chronic fatigue syndrome was a severe impairment, the Court concludes that the A.L.J.'s decision was not erroneous.  Plaintiff has not identified and the Court cannot locate any physician's diagnosis that Plaintiff suffered from chronic fatigue syndrome.  Accordingly, the Court cannot conclude that the A.L.J. erred in failing to discuss

chronic fatigue syndrome as a severe impairment.

B.   Whether The A.L.J. Erred In Assessing Plaintiff's
     Credibility And Her Subjective Complaints Of Pain

Plaintiff next contends that the A.L.J. erred in assessing
her credibility and her subjective complaints of pain.
Specifically, Plaintiff contends that the A.L.J. failed to
determine whether Plaintiff's medical impairments were capable of
causing her pain and failed to adequately consider the factors
used for assessing pain.  With respect to the later element,
Plaintiff contends that the A.L.J. failed to consider her
testimony concerning the difficulties she had in performing daily
activities and failed to consider all the various types of
medication Plaintiff took and their side-effects.

Although the A.L.J. must consider a plaintiff's subjective
complaints of pain, the A.L.J. has the discretion to evaluate the
plaintiff's credibility and "'arrive at an independent judgment
in light of medical findings and other evidence regarding the
true extent of the pain alleged by the claimant.'"  Gantt v.
Commissioner Social Sec., 2006 WL 3081094, *2 (3d Cir. Oct. 31,
2006) (citations omitted).  Subjective complaints alone are
insufficient to establish disability and allegations of pain must
be supported by objective medical evidence.  Id., 20 C.F.R. §
404.1529.  In evaluating pain, the A.L.J. must first determine
whether the plaintiff suffers from a medical impairment that
could reasonably be expected to cause the alleged symptoms.  Once

20

the A.L.J. makes this determination, he or she must evaluate the
intensity and persistence of the pain or symptom, and the extent
to which it affects the individual's ability to work.
Specifically, the A.L.J. is required to consider such factors as
(1) plaintiff's daily activities; (2) the duration, location,
frequency, and intensity of the pain and other symptoms; (3) any
precipitating and aggravating factors; (4) any medication taken
to alleviate pain or other symptoms; (5) treatments other than
medication; (6) any other measures used to relieve the symptoms;
and (7) other factors concerning functional limitations or
limitations due to pain or other symptoms. 20 C.F.R. §
416.929(c)(3)(i)-(vii).

This analysis requires the ALJ to assess the plaintiff's
credibility to determine the extent to which he or she is
accurately stating the degree of pain and/or the extent to which
he or she is disabled by it.  See 20 C.F.R. § 404.1529(c).
Generally, the A.L.J.'s assessment of a plaintiff's credibility
is afforded great deference, because the A.L.J. is in the best
position to evaluate the demeanor and attitude of the plaintiff.
See e.g. Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir.2001);
Griffith v. Callahan, 138 F.3d 1150, 1152 (8th Cir. 1998); Wilson
v. Apfel, 1999 WL 993723, *3 (E.D. Pa. Oct. 29, 1999).  However,
the A.L.J. must explain the reasons for his or her credibility
determinations.  Schonewolf v. Callahan, 972 F. Supp. 277, 286

(D.N.J. 1997) (citations omitted).

As Plaintiff acknowledges, the A.L.J. identified the appropriate analysis to be applied to Plaintiff's subjective complaints of pain.  The question for the Court is whether the A.L.J. went on to apply this analysis correctly.  After reviewing the A.L.J.'s analysis in light of the applicable legal principals, the Court concludes that the A.L.J.'s evaluation of Plaintiff's subjective complaints of pain is supported by substantial evidence.  Although the A.L.J. did not use the precise wording that Plaintiff's medical condition could reasonably be expected to cause pain, the A.L.J. made this finding when he stated that "[t]he medical evidence indicates that the claimant has mild to moderate degenerative lumbar disc disease <u>with pain</u>, impairments that are severe . . ."  (Tr. 16) (emphasis added).  The A.L.J. then went on to assess Plaintiff's complaints of pain in light of the criteria set forth in the regulation, and Plaintiff's credibility.  In this regard, the A.L.J. noted that the medical evidence and Plaintiff's testimony to other health care providers did not fully coincide with her testimony at the hearing that her pain was disabling.  As the A.L.J. noted, Plaintiff can drive a vehicle and testified that she drives when she has to.  Plaintiff also testified that she engages in some household activities, as well as social activities, and goes out with her boyfriend when they have the

money and time.

The Court further notes that the A.L.J.'s credibility assessment and his conclusion that Plaintiff's complaints of pain were exaggerated is supported by other evidence in the record. For example, Dr. Rowe noted that Plaintiff complained of tender points in an "exaggerated manner," and had been "lost to follow-up" due to apparent drug seeking behavior when she attempted to obtain multiple prescriptions for pain medication from other physicians.  Similarly, Dr. Hosny noted that Plaintiff used more pills than he prescribed, and he could not refill her prescription for this reason.  Moreover, Dr. Ausejo apparently caught Plaintiff in an outright falsehood, noting that although she walked on crutches during her appointment and reported that she could not drive so her mother drove her to her appointment, Dr. Ausejo observed her walking briskly without crutches to her car and driving off by herself.

Further, to the extent that Plaintiff's complaints of pain were not exaggerated, the Court concludes that the A.L.J. adequately considered these complaints in his RFC of Plaintiff and the limitations he placed on her abilities.  These limitations were substantially consistent with Plaintiff's testimony to Dr. Lifrak concerning her limitations.  Accordingly, the Court concludes that the A.L.J. did not err in his assessment of Plaintiff's credibility and her subjective complaints of pain.

C.    Whether The A.L.J. Failed To Properly Weighed The
      Opinion Of Plaintiff's Treating Physician

Plaintiff next contends that the A.L.J. erred in rejecting

the opinion of her treating physician, Dr. Willet.  Dr. Willet

opined that Plaintiff lacked the RFC for even sedentary work.

Plaintiff contends that Dr. Willet's opinion was supported by her

own testimony, as well as by the medical evidence in the record,

including the notes and/or reports of Dr. Balu and Dr. Lifrak.

An A.L.J. may reject the opinion of a treating physician if

the opinion is not supported by medically acceptable clinical and

laboratory diagnostic techniques and is inconsistent with other

substantial evidence in the record.  Fargnoli v. Massanari, 247

F.3d 34, 42 (3d Cir. 2001).  If the A.L.J. rejects the opinion of

a treating physician, he or she must adequately explain the

reasons for doing so on the record.  Mason v. Shalala, 994 F.2d

1058, 1067 (3d Cir. 1993).  If a treating physician's opinion is

rejected, the A.L.J. must consider such factors as the length of

the treatment relationship, the nature and extent of the

treatment relationship, the supportability of the opinion, the

consistency of the opinion with the record evidence, any

specialization of the opining physician and other factors the

plaintiff raises, in determining how to weigh the physician's

opinion.  20 C.F.R. § 404.1527(d)(2)-(6).

In this case, the A.L.J. declined to afford any weight to

the opinion of Dr. Willet that Plaintiff could perform less than

24

the RFC for sedentary work.  The Court cannot conclude that the
A.L.J.'s decision was erroneous.  Although Dr. Willet was
Plaintiff's family physician, he was not a specialist and none of
the specialists who treated Plaintiff opined that Plaintiff was
so severely limited as to be disabled.  Further, Dr. Willet's
assessment is inconsistent with Plaintiff's own testimony
concerning her limitations.  For example, Dr. Willet opined that
Plaintiff could only lift less than ten pounds and should never
climb stairs, yet Plaintiff reported to Dr. Lifrak that she could
climb stairs and could lift approximately 15 pounds.

     In lieu of Dr. Willet's opinion, the A.L.J. credited the
opinion of Dr. Lifrak, the examining consultative physician, and
the other reviewing state agency physicians.  In this regard, the
A.L.J. provided for limitations in some areas that were even
greater than those identified by the state agency physicians and
provided Plaintiff with a sit/stand option to accommodate her
pain.  The A.L.J. also limited Plaintiff to work that required no
exposure to damp or cold conditions.  Accordingly, the Court
concludes that the A.L.J.'s assessment of Plaintiff's RFC and his
decision not to accept the opinion of Dr. Willet were adequately
explained and supported by substantial evidence.

CONCLUSION

     For the reasons discussed, the Court will grant Defendant's
Motion For Summary Judgment and deny Plaintiff's Motion For

Summary Judgment.   The decision of the Commissioner dated

December 29, 2004, will be affirmed.

An appropriate Order will be entered.